Good morning, Your Honors. Tyler Andrews for the appellant, Ms. May Yuen Huang. At this time, I would like to reserve two minutes of my time for rebuttal. All right. Keep your eye on the clock. I'll try to help you out as well. Thank you. I appreciate that. Your Honor, the appellant, Ms. Huang, came to this country to escape communist oppression in China. While in the United States, Ms. Huang became a follower of Jesus Christ and sought to share the gospel message with her family back in China. This message quickly spread to others in her family, who also converted in her native village in the Fujian province. Her family and other members of the village began home worship services, which are prohibited and severely persecuted in China. Help me on that. I thought that they had a policy now that you could get a permit and have home churches. Your Honor, that's correct in extremely limited circumstances. It has to be officially state-sanctioned Protestant worship through the Communist Party. In some cases, it can take years to get that. Is that the way it is? Yes. Getting a liquor license here can take a long time. Probably even worse than that, Your Honor. One of the ways we can establish that is just by looking at the record here. Because based on these activities that were happening in her native China and the supposedly subversive activity of sending Bibles and other materials back to her family, Ms. Huang here was expressly named by communist officials and threatened with arrest. Her family home was searched and ransacked. Her mother was severely beaten. She was hospitalized, arrested, jailed, and fined. The village was told in a public notice posted that if Ms. Huang ever returned to China, she would be, quote, duly punished. This was all for sending the religious materials to her mother-in-law? Correct, Your Honor. This is not based on Ms. Huang's oral testimony. This is in the record. In fact, the record is full of primary documentary evidence that was not refuted by the government and which was entered into the record without objection. But the IJ found her not creditable, right? Correct. What's your answer to that? Well, that's why we're here today, Your Honor. I think that just based on the documentary evidence alone, Ms. Huang clearly meets the Parada versus Sessions test that she has a well-founded fear of persecution that's subjectively genuine and objectively reasonable. But here, the immigration judge and subsequently the Board of Immigration Appeals, they essentially ignored the substantial documented evidence, which was never objected to, and instead focused on what essentially boils down to a one-day discrepancy in Ms. Huang's oral testimony about what was in those documents. So that sort of puts the cart before the horse, and I would submit that that was an unfair determination, clearly erroneous, and goes against the substantial weight of evidence presented during the hearing. What do you say to the fact that in finding adverse credibility, the IJ focused not only on the discrepancy and the date, but on her shifting story as she's confronted with the evidence? So if I, and correct me if I'm wrong, if I misstate the record, she initially testified a couple of times that after her mother-in-law returned home from being detained, it was three days later that her mother-in-law finally confessed to the police or identified Ms. Huang as the source of the material, so she said that a couple of times. Then she was confronted with the document, she gave a different date, and then she was confronted with inconsistency again, and then she said, oh, well, I don't remember. So one is focus on the IJ's discussion of the shifting story as she's confronted with the evidence, and also focus on the IJ's discussion of the lack of corroboration, and tell us why that doesn't provide the substantial evidence to support the adverse credibility finding. Certainly, Your Honor. First, regarding the so-called shifting story here, for one thing, Ms. Huang was not confronted with the actual document. That's another issue that I can address. The government and the immigration judge actually precluded her from looking at the documents while she was testifying, and the exchange that you mentioned, which really forms the crux, the basis of this entire asylum denial, is based on one very brief exchange. It wasn't like this was a theme running throughout the testimony. This was a situation where the documents clearly lay out the story and the timeline. These are exactly from the official sources in China, and she was having trouble remembering exactly what date certain things occurred. If you look at the transcript that's in the record here, I think it becomes fairly clear that this is not a situation where she's just trying to move back and forth on her story or shift stance. She's legitimately saying, I don't remember exactly the date that these things happened. They are spelled out in the documents, and that's a completely accurate statement. In fact, that's right in line with the long line of cases from this court, cited in our opening brief, that the court cannot focus on trivial inconsistencies in testimony, particularly, usually, when the court mentions what constitutes a trivial inconsistency, it's something precisely like this. There's a date that's wrong, or there might be a difference in address. I think we can pay attention to trivial inconsistencies if they seriously bear on credibility, can't we? I believe that they can be. If somebody says, I remember absolutely every detail of the beating they gave me. There was a short fella, and there was a big fat fella, and they were wearing green shirts, and I had a blue shirt, and maybe the color's wrong, so that's trivial, but he said he remembered every detail, so I don't know why the trivial details are determinative. That's a good analogy, Your Honor, and I think in that situation that would be a little closer to the line of if someone is testifying under oath that they absolutely remember every detail of this occurrence, but here we don't have that. Here, in fact, we have the opposite. We have Ms. Wang testifying that she's terrified at this hearing. She's confused. There was translation issues, and more importantly, she specifically says, I don't remember the exact date, but I know that this is the sequence on which it happened, and her testimony, I think the most important fact is it's corroborated by the documents themselves. The documents essentially speak for themselves. The IJ faulted her from the lack of declaration from her mother-in-law and son, despite the fact that the father-in-law had helped to supply additional documentation to support her claim. Do you want to briefly address that? Yes, Your Honor. There is a long line of cases, even post-Real ID Act cases from this circuit that say when, really two points I'd like to address. First is when corroborating evidence is presented, there cannot be a requirement from the immigration judge that additional measures, not only do the documents, the public notices, the statement from her brother from China, the testimony from her church colleagues here in America, those all lend to her veracity. They corroborate her testimony. So for the judge to then require an additional measure in order to somehow salvage her entire asylum application was error. You wanted to save a little time. Thank you, Your Honor. In closing my initial argument, I'd submit that there is no basis for the judge to cherry pick evidence to selectively look for inconsistencies while at the same time disregarding the bulk or the totality of the circumstances as stated by this court in Wang v. Whitaker. And with that I reserve the rest of my time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, in all you sit for the Attorney General. Counsel, help me on something that's bothering me in this case. If I've got the facts right and educate me if I don't, all the bad stuff that happened is not the petitioner talking about things that happened to her. It's the petitioner talking about things that her mother-in-law told her happened to the mother-in-law. Is that right? Yes, that's correct, Your Honor. Now, the errors or the inconsistencies in her testimony are about her recounting in her testimony to the I.J. about what her mother-in-law said about things that happened to the mother-in-law. Is that right, too? Yes, Your Honor. Yeah, that's a fair characterization. Now, here's the question I have. I don't think I'm unusual in that I was not nearly as attentive to whatever my mother-in-law said to me about things in her life that happened this time or that time or April or July or with Mr. X or Mr. Y or Ms. Z. I might even go in one ear and go out the other in some circumstances. I just remember clearly some things that happened that involved me. But here, there's nothing that involves the petitioner. It all involves her mother-in-law, and the petitioner wasn't there, so it's all about her memory of precisely what dates her mother-in-law told her on the phone. I think it was on a phone about things that happened to the mother-in-law. Why would anyone be entirely accurate or consistent about that? Well, Your Honor, I think that it's distinguishable from the experience of talking to a family member about just random events or a dinner party or whatever it may have been. This was a circumstance in which her mother-in-law was reported. Pretty significant. I mean, gosh, if my father-in-law said your mother-in-law went to the hospital Tuesday, fortunately it was nothing serious. They discharged her immediately. I might still mix it up with Wednesday. Isn't that... I don't think that's just me. I think it's people remembering details of what other people said as opposed to remembering details of what happened to them. I understand that, Your Honor. I think it's important to frame this in the fact that this is an asylum claim by an individual, and it's their burden of proof to establish their claim. And so they are the ones that need to marshal the evidence and the facts in a consistent manner and present it to the agency in order to have the privilege of asylum in this country. So the fact that we might talk about the fact that some people, you might not remember specific details, the key here is that it's the immigration judge who is the fact finder here and who is in best position to address the credibility of the claim. And while I understand your examples of people possibly... I don't think my daughter-in-law pays a lot of attention to what I say to her either. But I would assume that in situations where there is a purportedly grave instance of something that resulted in someone being arrested, detained, and abused, that you would remember that in a different, in a sort of more specific way. There are two levels of memory here. We're depending on the mother-in-law to be consistent in what she says to her daughter-in-law. And we're also talking about the ability of the daughter-in-law to remember consistently and accurately what her mother-in-law told her on the phone. Is that right? Well, I think the focus more is on what the petitioner had testified to, what she was presenting in terms of when she was presenting her claim. You mean remembering her own testimony? Or just remembering what was told to her, what she was relaying to the court. And her inability to provide testimony that was consistent, I mean, the entire claim is predicated on what happened to her mother-in-law. And this is all, these were events in July of 2009, is that correct? Yes, Your Honor. Okay, and the testimony before the IJ was in 2012. Yes, Your Honor. So she's trying to recall what her mother-in-law said over two years before on these dates. Are you familiar with the Ninth Circuit case of Wren, R-E-N, Wren v. Holder? Yes, Your Honor. Okay, that was a 2011 decision, and it was also a case involving a native who participated in underground Christian church things. And the Ninth Circuit reversed the IJ and the BIA where the discrepancy was when was he forced to stand outside in the heat after his detention when he fell unconscious, and in his written thing he says it was three days after he was detained, and in court he says, no, it was the second day. And this was something that happened to him. And yet the court said, look, that's too trivial a discrepancy. And here, as Judge Kleinfeld pointed out, this isn't even events that occurred to her like it occurred to Wren. This is what occurred to her mother-in-law. So why wouldn't Wren be sort of a controlling, analogous case to say that's too trivial if you're just fussing about what date the mother was arrested and how many days later she revealed the name of her daughter-in-law? Well, I think, Your Honor, the key here is that there is a single catalyzing incident here, what happened to her mother-in-law. There is only one claim. The claim is based all on that. And the fact that she can't provide credible, straight testimony between the link, the central piece of evidence, which is a public notice that alleges to identify her to the public as someone who is a behind-the-scenes plotter, if she's unable to provide testimony consistent with that, that, understandably, for the agency, casts a doubt on her credibility. Was there any challenge to the document itself, which was, I think, dated July 6, 2000? The challenge was based on the fact that her testimony was, as Judge Nguyen mentioned, was shifting on the issue. Well, as to whether the mother-in-law gave up her name three days after she was arrested, or, you know, was that just a misremembering of the dates, or her mother-in-law mistakenly thought it was three days later. Maybe it was the very next day, which would be consistent with the July 6 arrest warrant. But that wasn't what she testified to. Oh, I know. So, again, it is her burden. And I understand that while the court might have... It's not a question that she was inconsistent as to the date, but I think the point is whether that inconsistency really matters, or whether it's so trivial that it puts this within the scenario like in Wren. How do you respond to that? Well, I would first focus on the fact that it's the court doesn't have to agree how the agency handled it in terms of the weight given to this inconsistency. This is a substantial evidence review. So it has to show the record compels this. And taking that inconsistency, taking with the fact that there was corroborating evidence not presented, reasonably available corroborating evidence that could have been presented from the mother-in-law to bolster her claim. This is someone that she was still in contact with. This is someone whose spouse had provided documentary evidence to support her claim. The fact that this document was that any statement from her didn't come in to help bolster her claim itself further cast doubt. I think taking the inconsistency alone is not what the agency did here. They noted the inconsistency and observed the inconsistency along with the absence of any statement from the central figure of her claim, that being the mother-in-law. Did the IJ give notice that corroborating evidence or a declaration from the mother-in-law and the son would have been helpful? During the testimony, the immigration judge expressly asked, why don't you have a statement from your mother-in-law? She is someone who is central to this case. Petitioner's explanation was that her mother-in-law was uneducated and then challenged on that, asked why not have someone write a statement for her. She indicated she or her mother-in-law wouldn't want to implicate someone else. However, that also rang hollow because her husband is the one that ultimately provided all of this evidence for the petitioner's claim. So the petitioner was provided an opportunity. It was made very clear to her that there were some issues and concerns as to the veracity of her claim, that there was some evidence that would have helped her and was asked to explain why this evidence wasn't presented. Her explanation is the agency, the immigration judge, reasonably rejected it as he was entitled to do so based on finding them not persuasive. You know, under the REAL ID Act, as I understand it, an asylum applicant's testimony, quote, may be sufficient to sustain an applicant's burden without corroboration. So really all this goes back to whether she's creditable or not in her testimony, right? Yes. When the agency was under the impression that there might be some credibility issues, that's where the corroboration was kind of pieced in to see if there was something else that could have been bolstered her claim. This case may therefore hinge on whether we think that the discrepancy in her testimony is too trivial to have been a basis for an adverse credibility determination or not. I think so, Your Honor. Being that it is the central focus of the claim and the fact that the petitioner had, this is without the public notice, without the statement identifying her as this individual, this behind-the-scenes plotter, there is no claim. There is no evidence of any fear of future harm based on it. There's that document that says there's an arrest warrant out for her and she'll be punished when she gets back from the city council. Oh, that's the one I'm referencing, Your Honor. Without that public notice, there is no other individualized evidence to support her claim. Does the government challenge the validity of that notice? Not in terms of the authenticity of the document, more in the fact that her testimony was inconsistent with that document, thus casting doubt on the legitimacy of the document itself. I don't understand what you mean by a difference between legitimacy and authenticity. I thought it was quite possible the document was forged. I don't know. That's what I meant to indicate, Your Honor. But you seem to be conceding that it wasn't forged. No, I'm saying that the agency did not expressly challenge the authenticity or anything. The way it was addressed by the immigration judge was the fact that her testimony was inconsistent with it and that it may have been fabricated based on kind of considering the totality of the circumstances with her testimony when you're considering that document. Did the BAA or the IJ say that they were not persuaded that that was a genuine document that genuinely said on behalf of the city council that she'd be arrested and punished? They did question it. The immigration judge questioned whether it was fabricated or not. Yes, Your Honor. Okay. I see my time is wrapping up. Actually, I've passed my time. Thank you. Well, unless my colleagues have additional questions. Thank you very much. Thank you very much, Your Honors. Thank you, Your Honors. Very briefly in rebuttal, the documents at issue here that Your Honors rightly picked up on in your questioning, they are the central focus of this case. And those documents are not just about the mother-in-law. These are unrefuted, admitted. Well, the IJ says, and I'm looking at ER 45, the court concludes from the unresolved inconsistency in this case, which the court considers to be central to respondents' credibility, that the documentary evidence presented by the respondent is not credible and is most likely fabricated. Right. What significance does that have to our analysis? Well, I think that your citation to the Wren case makes sense here as well because to make that finding, to jump to that conclusion, is pure conjecture based on the timeline here. If we look at so essentially what the immigration judge did was say, here we have all this evidence in the record. There's been no objection made to it. There's been no evidentiary challenge to its authenticity. There's public seals from the village in China. There's photographs of it posted in China. There's official translator certificates saying, yes, this is an official document that I translated. And rather than look at any of that corroboration or the merits of these documents themselves, the primary source documents, what the immigration judge did here was say, well, you can't remember what the date was on one of these documents that's never been objected to from two years ago, and therefore I'm going to find that I'm not even going to consider them. His rejection of the documents was based on his opinion that she lacked credibility? Correct, Your Honor. Was that the only basis? Did he express any other basis for? The only basis is that one sentence that Your Honor alluded to where he says, well, there's been an adverse credibility finding, therefore maybe these documents were fabricated. But there's no independent basis for that to jump to that conclusion. Ms. Wang never – she's not the creator of these documents and never claimed to be. So for the immigration judge to ask, well, what is one of the dates on these documents, for her to get that one date wrong by one day and then to just throw out the evidence altogether I think is clear error. If anything, it should be the other way around. The documents should be analyzed to then give weight to determine whether or not Ms. Wang is credible rather than the other way around. Thank you. Thank you, counsel. Thank you to both sides for your argument. In this case, the matter is submitted.
judges: Gilman, Kleinfeld, Nguyen